IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CORTIS, INC., | § | |
| | § | |
| Plaintiff, | § | **COMPLAINT** |
| | § | Civil Action No. _____ |
| v. | § | |
| | § | |
| CORTISLIM INTERNATIONAL, | § | |
| INC., NATIONAL MARKETING, | § | **JURY TRIAL DEMANDED** |
| INC., CORTISLIM | § | |
| INTERNATIONAL LLC, ALAN R. | § | |
| SPORN, JOHN S. NEUBAUER, JR, | § | |
| AND RICHARD A. SPORN, | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

Plaintiff Cortis, Inc. ("Plaintiff") files its Complaint against Defendants CortiSlim International, Inc., National Marketing, Inc., CortiSlim International, LLC, Alan R. Sporn, John S. Neubauer, Jr., and Richard A. Sporn (collectively all referred to herein as "Defendants," and from time to time, individually referred to as "Defendant") and hereby alleges as follows:

## PARTIES

1.    Plaintiff is and was, at all times relevant herein, a corporation duly organized and existing under the laws of the State of Texas, with its principal place of business at 10849 Composite Drive, Dallas, Texas 75220.

2.    Defendant CortiSlim International, Inc. ("CortiSlim, Inc.") is and was, at all times relevant herein, a corporation duly organized under the laws of the State of Delaware, with its principal place of business located at 28241 Crown Valley Parkway, Suite F-415, Laguna Niguel, California 82677.

1

3.     Defendant National Marketing, Inc. ("NMI") is and was, at all times relevant herein, a corporation duly organized under the laws of the State of Wyoming, with its principal place of business located at 28241 Crown Valley Parkway, Suite F-415, Laguna Niguel, California 82677.  NMI's status in Wyoming is "revoked."

4.     Defendant CortiSlim International, LLC ("CortiSlim, LLC") is and was, at all times relevant herein, a limited liability company duly organized under the laws of the State of Nevada, with its principal place of business located at 28241 Crown Valley Parkway, Suite F-415, Laguna Niguel, California 82677.   CortiSlim, LLC's status in Nevada is "revoked."  Upon information and belief, CortiSlim, LLC owns certain of the assets used in the marketing and sale of the "CortiSlim®" brand products.

5.     Defendant Alan R. Sporn ("A. Sporn") is and was, at all times relevant herein, an individual and citizen of the State of California, residing in Orange County, California.  A. Sporn is the founder, promoter, chief executive officer, a director, and a stockholder of CortiSlim, Inc. and NMI and founder, promoter, chief executive officer and Managing Member of CortiSlim, LLC.

6.     Defendant John S. Neubauer, Jr. ("Neubauer") is and was, at all times relevant herein, an individual and citizen of the State of California, residing in San Diego County, California.  Neubauer is the Chief Financial Officer of CortiSlim, Inc.

7.     Defendant Richard A. Sporn ("R. Sporn") is and was, at all times relevant herein, an individual and citizen of the State of New York, residing in Westchester County, New York.   R. Sporn is a stockhoder, a board member, the Chief Strategy Advisor and General Counsel of CortiSlim, Inc. and a Managing Member of CortiSlim, LLC.

8.     Plaintiff is informed, believes, and based thereon alleges that Defendants in this action acted as alleged in this Complaint jointly and for common purpose; that the acts alleged in this Complaint were in furtherance of a conspiracy among the Defendants; and that all actions were taken pursuant to that common design to defraud Plaintiff and resulted in the fraud, breach of contract and breach of fiduciary duty set forth herein, from which Plaintiff was damaged.

9.     Plaintiff is informed, believes, and based thereon alleges that, at all times relevant, there existed a unity of interest and ownership between A. Sporn, CortiSlim, Inc., CortiSlim, LLC and NMI (collectively, the "Sporn Affiliated Defendants") such that any individuality and separateness between the Sporn Affiliated Defendants never existed or has ceased to exist, and that the Sporn Affiliated Defendants are the alter egos of each other.  Plaintiff is further informed, believes, and based thereon alleges that the Sporn Affiliated Defendants, and each of them, used assets of each of the other Sporn Affiliated Defendants for their own purposes as though it were their own and caused assets to be transferred between them or to entities they controlled.  Plaintiff is informed, believes, and based thereon alleges that adherence to the fiction of the separate existence of the Sporn Affiliated Defendants, and each of them, as an entity distinct from the other Sporn Affiliated Defendants would permit an abuse of the corporate privilege, would sanction fraud, and promote injustice, as well as set up the business of the Sporn Affiliated Defendants to make an unfair profit from fraudulent misconduct, unlawful evasion of contractual obligations and the deprivation of the rights and privileges afforded to minority shareholders under State and Federal law.  In particular, but without limitation, the Sporn Affiliated Defendants each directly and indirectly controlled each other, and each is jointly and severally liable for the actions

3

alleged in this Complaint. Each has direct and indirect control of the other, including the power to direct or cause the direction of the management and polices of the other, through ownership of securities and assets, by contract, and otherwise. The Sporn Affiliated Defendants exercised active control over the day-to-day affairs of the other, and each had the power to control and influence the particular transactions alleged herein, whether or not such power was actually exercised in these instances. (References herein to A. Sporn shall also refer to the Sporn Affiliated Defendants.)

## JURISDICTION AND VENUE

10.     Subject matter jurisdiction is invoked under 28 U.S.C. § 1331 and 15 U.S.C. 78aa, on the basis that Plaintiff alleges violations of the anti-fraud provisions of the Securities Act  of 1934.  Defendants directly or indirectly employed the means and instrumentalities of interstate commerce in connection with the acts alleged in this Complaint including, without limitation, the mails, wire, interstate telephone conversations and the internet.

11.     Supplemental jurisdiction of this Court is invoked over all other claims that do not arise under federal statute, in that these supplemental claims are so related to the federal claim upon which this Court's original jurisdiction is based, they form part of the same case or controversy under Article III of the United States Constitution pursuant to 28 U.S.C. § 1367.

12.     Jurisdiction of this Court is also invoked under 28 U.S.C. § 1332 as Plaintiff is a corporation incorporated under the laws of the State of Texas with its principal place of business in Texas.  CortiSlim, Inc. is a corporation incorporated under the laws of the State of Delaware with its principal place of business in California.  NMI is a corporation incorporated under the laws of the State of Wyoming with its principal

place of business in California.  CortiSlim, LLC is a limited liability company organized under the laws of the State of Nevada with its principal place of business in California. A. Sporn is a citizen of the State of California.  Neubauer is a citizen of the State of California.  R. Sporn is a citizen of the State of New York.  The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332. Complete diversity exists as the matter in controversy is between citizens of different states.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and 15 U.S.C. 78aa because a substantial part of the events or omissions giving rise to the claims in this action occurred in this District.

## **BACKGROUND FACTS**

14.     CortiSlim, Inc. is in the business of procuring the manufacture of, and marketing and selling, various dietary supplement products, under the name of "CortiSlim®."

15.     NMI is or claims to be the owner of certain assignments of federal trademarks for or involving the name "CortiSlim®," including marks Registration Number #4044657, 3132029, 3132028 and 3132026.  NMI acquired the assignment of certain of the said trademarks from Window Rock Enterprises, Inc.

16.     Despite the fact that NMI is or claims to be the owner of the CortiSlim® marks, the Sporn Affiliated Defendants, Neubauer and R. Sporn represent, and at all times relevant to this matter have represented, that CortiSlim, Inc. is the owner of the registered trademark "CortiSlim®."

17.     One of the main supplements sold by CortiSlim, Inc. is "CortiSlim® Advanced."   The ingredients in CortiSlim® Advanced include three trademarked

proprietary ingredients. The Sporn Affiliated Defendants, Neubauer and R. Sporn represent, and at all times relevant to this matter have represented, that CortiSlim, Inc. owns all of the rights to the trademarked ingredients in the CortiSlim® products. Upon information and belief, CortiSlim, Inc. owns trademarks for two of the proprietary ingredients; however, the trademark for the third proprietary ingredient, "Liptiplex®," is held by NMI, who acquired the trademark by assignment from Window Rock Enterprises, Inc.

18.     The Sporn Affiliated Defendants, Neubauer and R. Sporn represent, and at all times relevant to this matter have represented, that CortiSlim, Inc. owns the domain name "www.cortislim.com." Upon information and belief, A. Sporn is the registered owner of the domain name "www.cortislim.com."

19.     In September 2011, CortiSlim, Inc. began a campaign to raise $5,000,000.00 from investors, by means of a Private Placement Memorandum dated September 26, 2011 (the "Private Placement Memorandum"). In the Private Placement Memorandum, CortiSlim, Inc. stated that the proceeds from investors would be used in part for the execution of the marketing plan for direct marketing of the CortiSlim® products. CortiSlim, Inc.'s efforts to raise the $5,000,000.00 had not succeeded when A. Sporn became acquainted with Mr. John Graziano ("Graziano") in the early fall of 2011.

20.     In initial phone calls and email messages between A. Sporn and Graziano, A. Sporn told Graziano about the money raising efforts by CortiSlim, Inc. and the need for a well-known marketing and advertising company, such as the one owned by Graziano, to direct and oversee all future marketing and advertising efforts of CortiSlim, Inc.

6

21.     Graziano owns and operates Max Media, Inc., ("Max Media") a well-known marketing and advertising firm.  Graziano is a forty-year veteran of marketing and advertising and has spent the last twenty-five years being heavily involved in the field of direct response marketing and advertising.  Plaintiff's President, Clay Cooley ("Cooley"), and Graziano worked together a number of years on the TV and radio advertising of Cooley's new and used vehicle sales businesses located in the Dallas- Fort Worth, Texas area.

22.     In later conversations by email, A. Sporn communicated in greater detail with Graziano about CortiSlim Inc.'s need for capital.  A. Sporn sought the capital to first engage Max Media to prepare the final CortiSlim, Inc. marketing plan and then to execute certain parts of the plan, including, but not limited to, engaging a celebrity talent person, producing a new television commercial, test marketing the CortiSlim® products using the new commercial in selected markets, and  improving and expanding the CortiSlim, Inc. website.

23.     Graziano was aware that Cooley had an interest in products sold through direct response marketing.  Therefore, Graziano relayed the CortiSlim, Inc. investment opportunity to Cooley.

24.     A. Sporn provided a copy of the CortiSlim, Inc. Executive Business Plan, the Private Placement Memorandum, and a Valuation Report of CortiSlim, Inc. dated July 15, 2010, to Cooley.  The Valuation Report stated that the fair market value of CortiSlim, Inc. was $183,000,000.00.

25.     Following numerous conversations by telephone, and emails between A. Sporn, Neubauer and Cooley, Cooley's wife, Lisa Cooley, and son, Chase Cooley about CortiSlim, Inc. and the opportunity to invest in CortiSlim, Inc., A. Sporn sent a final

proposal of an investment structure to Cooley requiring Cooley to invest $650,000.00 for twenty percent (20%) of the authorized shares of the common stock of CortiSlim, Inc. A. Sporn also proposed that Cooley could have a further option to acquire an additional ten percent (10%) of the CortiSlim, Inc. authorized shares of common stock on or before January 1, 2012, for the sum of $500,000.00 and an additional five percent (5%) of the CortiSlim, Inc. authorized shares of common stock on or before February 1, 2012, for the sum of $500,000.00. Cooley advised A. Sporn that he would consider the investment proposal by A. Sporn only if:

    a.    the $650,000.00 were used only for marketing costs, and none of the monies would be used to pay prior obligations of CortiSlim, Inc. or salaries to CortiSlim, Inc. employees, including A. Sporn and Neubauer;

    b.    Graziano's company would be the exclusive marketing and advertising company for CortiSlim, Inc.;

    c.    CortiSlim, Inc. owns the CortiSlim® assets, including the trademarks, domain name, $1,400,000.00 in existing inventory, free and clear of debt, and all other assets used in its business operations;

    d.    Cooley, his wife, Lisa Cooley, his son, Chase Cooley, and Graziano would become members of the Board of Directors of CortiSlim, Inc.;

    e.    A. Sporn agreed to obtain Cooley's and the Board of Director's consent prior to making any major expenditures or major business decisions for CortiSlim, Inc.; and

      f.     there were no pending issues, violations, suits or claims by the FDA, FTC nor any other federal agency, nor any current lawsuits against CortiSlim, Inc.

26.    A. Sporn agreed to all of Cooley's conditions and requirements.

27.    In connection with the final proposal, Neubauer assured Cooley that Neubauer, as the Chief Financial Officer of CortiSlim, Inc., would exercise strict control over Plaintiff's investment monies to assure the monies were used for the intended purposes.

28.    In connection with the final proposal, Graziano discussed with R. Sporn, General Counsel of CortiSlim, Inc., about the condition required by Cooley that CortiSlim, Inc. have no pending issues, violations, suits or claims by the FDA, FTC nor any other federal agency, nor any current lawsuits against CortiSlim, Inc.  R. Sporn assured Graziano that there were no lawsuits.  Graziano relayed this assurance to Cooley.

29.    Cooley established Plaintiff, Cortis, Inc., to hold the CortiSlim, Inc. shares. After completing the negotiations for Plaintiff's investment, R. Sporn prepared a Subscription Agreement to consummate the investment transaction, together with the Stock Certificate No. 9 for 2000 shares of CortiSlim, Inc.'s common stock.  A copy of the Subscription Agreement and the Stock Certificate are attached hereto as Exhibits "A" and "B," respectively.  The Subscription Agreement that R. Sporn wrote stated "The Company represents there are no pending issues, violations, suits or claims by the FDA, FTC nor any other Federal Agency, and no current lawsuits against the Company." Cooley, on behalf of Plaintiff, thereafter delivered the amount of $650,000.00 to Cortislim, Inc for the stock.

30.     After receipt of Plaintiff's investment of $650,000.00, A. Sporn and Neubauer used a large portion of the $650,000.00 to pay salaries to themselves, as well as to pay other obligations of CortiSlim, Inc., instead of using the monies for the implementation of the CortiSlim, Inc. marketing plan.  Cooley, Lisa Cooley and Chase Cooley were not consulted about, nor did they agree to, these expenditures.  A. Sporn and Neubauer also refused to provide all of the financial information concerning CortiSlim, Inc. as and when requested by Cooley.

31.     Further, after receipt of Plaintiff's investment of $650,000.00, and without Plaintiff's agreement, A. Sporn engaged persons and/or companies to perform portions of the marketing plan in lieu of Graziano.  A. Sporn also deviated materially from the agreed use of funds intended for the marketing plan as well as from the execution of the marketing plan itself.

32.     Despite the representations made by A. Sporn, Neubauer and R. Sporn to the contrary, there exists at least one lawsuit filed against A. Sporn, CortiSlim, Inc., CortiSlim, LLC, and NMI.  This lawsuit, styled *Vitatech International, Inc., Plaintiff, vs. Alan R. Sporn, CortiSlim International formerly known as National Marketing, Inc.; National Marketing, Inc., CortiSlim International, LLC, et.al.,* and pending as Case No. 30-2011 00459259, in the Superior Court of the State of California, County of Orange, California.  This lawsuit existed at all times relevant to this matter, and continues to exist as of the date of filing of this Complaint.

32.     When challenged by Cooley about the refusal to provide the requested financial information, the misuse of the funds and deviation from the marketing plan, A. Sporn announced that Cooley, Lisa Cooley and Chase Cooley, would not be elected members of the Board of Directors of CortiSlim, Inc.

33.     Plaintiff has demanded that CortiSlim, Inc. repurchase Plaintiff's CortiSlim, Inc. shares of stock, or rescind the purchase of the stock, and reimburse Plaintiff its purchase price of $650,000.00, attorneys' fees and costs, and interest. CortiSlim, Inc. has refused to do so.

## CAUSES OF ACTION

## Count I- Common Law Fraud

## (applies to all Defendants)

34.     Plaintiff hereby realleges and incorporates herein, in full, the allegations contained in paragraphs 1 through 9 and 14 through 33 inclusive, as though set forth in full.

35.     The Sporn Affiliated Defendants, Neubauer and R. Sporn engaged in a device, artifice, and scheme to defraud Plaintiff by issuing Plaintiff materially false and misleading statements concerning the financial affairs and condition of CortiSlim, Inc. for the purpose of inducing Plaintiff to purchase CortiSlim, Inc. stock.

36.      Specifically, in or around the fall of 2011, the Sporn Affiliated Defendants, Neubauer and R. Sporn made representations to Plaintiff concerning:

a.     the ownership of CortiSlim, Inc.'s  assets and particularly the ownership of the CortiSlim® trademarks and domain name and the ownership of $1,400,000.00 of inventory free and clear of debt;

b.     the amount of debt owed by CortiSlim, Inc.;

c.     the accuracy of the value of CortiSlim, Inc. as stated in the Valuation Report;

d.     the strict controls in place to control the expenditures of Plaintiff's investment;

     e.     the use of the funds that Plaintiff invested into CortiSlim, Inc.;

     f.     the future makeup of the CortiSlim, Inc. Board of Directors;

     g.     the agreement to consult Cooley and the Board of Directors of CortiSlim, Inc. before making major business expenditures or decisions;

     h.     the non-existence of any current lawsuits against CortiSlim, Inc.;

     i.     the marketing plan and its execution; and

     j.     the company who would finalize the design and execution of the marketing plan, each as specifically stated in paragraphs 1 through 9 and 14 through 33 inclusive, inclusive.

37.     Plaintiff is informed, believes, and based thereon alleges that the Sporn Affiliated Defendants', Neubauer's and R. Sporn's representations were false in one or more of the following ways:

     a.     CortiSlim, Inc. does not own all of the assets used in CortiSlim, Inc.'s operations.  Specifically, CortiSlim, Inc. does not own the "CortiSlim®" trademarks or the domain name "www.cortislim.com." Further, CortiSlim, Inc. does not own the trademark for one of the key ingredients in the CortiSlim® Advanced product, and CortiSlim, Inc. does not own $1,400,000.00 of inventory free and clear of debt;

     b.     the Sporn Affiliated Defendants, Neubauer and R. Sporn did not intend to use, nor did they use, the $650,000.00 received from Plaintiff as represented by A. Sporn and Neubauer only for the execution of the marketing plan for the CortiSlim® products;

c.  the Sporn Affiliated Defendants, Neubauer and R. Sporn did not intend to use, nor did they use, Graziano and Max Media exclusively to design and to execute the CortiSlim, Inc. marketing plan;

d.  the Sporn Affiliated Defendants, Neubauer and R. Sporn did not intend to follow, nor did they follow, the marketing plan presented to Cooley;

e.  the Sporn Affiliated Defendants, Neubauer and R. Sporn did not intend to use, nor did they use, a substantial portion of the $650,000.00 for purposes approved by Cooley;

f.  the Sporn Affiliated Defendants, Neubauer and R. Sporn did not intend to exercise, nor did they exercise, strict controls over the expenditure of Plaintiff's investment;

g.  the Sporn Affiliated Defendants, Neubauer and R. Sporn did not intend to provide, nor did they provide, financial information about CortiSlim, Inc. as and when requested by Cooley;

h.  the amount of debt owed by Cortislim, Inc. was greater than represented to Cooley;

i.  the value of CortiSlim, Inc. was materially less than stated in the Valuation Report; and

j.  the representations made by the Sporn Affiliated Defendants, Neubauer and R. Sporn about the lack of any current lawsuits against CortiSlim, Inc. were false.

38.     When the Sporn Affiliated Defendants, Neubauer and R. Sporn made these representations, the Sporn Affiliated Defendants, Neubauer and R. Sporn either knew the representations were false or the representations were made recklessly, as a positive assertion, without any knowledge of their truth.   The Sporn Affiliated Defendants, Neubauer and R. Sporn made these representations for the purpose of inducing Plaintiff to act in reliance on these representations in the manner stated herein, or with the expectation that Plaintiff would so act.

39.     The Sporn Affiliated Defendants, Neubauer and R. Sporn intended that Plaintiff rely on the representations to induce Plaintiff to enter into the Subscription Agreement (Exhibit "A").   Plaintiff purchased the CortiSlim, Inc. stock in reliance upon the Sporn Affiliated Defendants', Neubauer's and R. Sporn's representations described in paragraph 36, and 1 through 9 and 14 through 33 inclusive, above.

40.     Plaintiff relied on the Sporn Affiliated Defendants', Neubauer's and R. Sporn's representations in entering into the transaction with CortiSlim, Inc.   Plaintiff had no way of knowing that the Sporn Affiliated Defendants', Neubauer's and R. Sporn's representations were false.   In fact, Plaintiff was unable to ascertain the truth concerning the Sporn Affiliated Defendants', Neubauer's and R. Sporn's representations given their control over the information at issue.   Plaintiff's reliance on the Sporn Affiliated Defendants', Neubauer's and R. Sporn's representations was reasonable.

41.     Had Plaintiff known the actual facts, Plaintiff would not have taken the actions alleged herein, including, but not limited to entering into the Subscription Agreement, paying $650,000.00 to CortiSlim, Inc. and purchasing the CortiSlim, Inc. stock.

42.     As a direct and proximate result of the Sporn Affiliated Defendants',
Neubauer's and R. Sporn's false representations, Plaintiff has suffered general and
special damages, including, but not limited to, the principal sum of $650,000.00,
deprivation of the use and benefit of that money, including interest which it would have
earned thereon, all in an amount to be proven at trial, but in excess of $750,000.00.

43.     By engaging in the foregoing conduct, the Sporn Affiliated Defendants,
Neubauer and R. Sporn acted with fraud and malice entitling Plaintiff to exemplary and
punitive damages, in the amount sufficient to punish and make an example of them, in
an amount to be determined at the time of trial by the jury.

## Count II-Federal Securities Fraud

## (applies to all Defendants)

44.     Plaintiff hereby realleges and incorporates herein, in full, the allegations
contained in paragraphs 1 through 9 and 14 through 33 inclusive, as though set forth in
full.

45.     The Sporn Affiliated Defendants, Neubauer and R. Sporn utilized the
means and instrumentalities of interstate commerce and/or the mails, telephone, wire
and internet to convey materially false statements concerning the sale of securities to
Plaintiff.

46.     The Sporn Affiliated Defendants, Neubauer and R. Sporn engaged in a
device, artifice, and scheme to defraud Plaintiff by issuing Plaintiff materially false and
misleading statements concerning the financial affairs and condition of CortiSlim, Inc.
for the purpose of inducing Plaintiff to purchase CortiSlim, Inc. stock.  Additionally, the
Sporn Affiliated Defendants, Neubauer and R. Sporn made untrue statements of
material facts and omitted material facts necessary to make the statements made, in

light of the circumstances under which they were made, not misleading.  Finally, the Sporn Affiliated Defendants, Neubauer and R. Sporn engaged in an act, practice and/or a course of business which operated as a fraud and/or deceit upon Plaintiff, all in connection with the purchase or sale of a security.

47.     Specifically, in or around the fall of 2011, the Sporn Affiliated Defendants, Neubauer and R. Sporn made representations to Plaintiff concerning:

a.     the ownership of CortiSlim, Inc.'s  assets and particularly the ownership of the CortiSlim® trademarks and domain name and the ownership of $1,400,000.00 of inventory free and clear of debt;

b.     the amount of debt owed by CortiSlim, Inc.;

c.     the accuracy of the value of CortiSlim, Inc. as stated in the Valuation Report;

d.     the strict controls in place to control the expenditures of Plaintiff's investment;

e.     the use of the funds that Plaintiff invested into CortiSlim, Inc.;

f.     the future makeup of the CortiSlim, Inc. Board of Directors;

g.     the agreement to consult Cooley and the Board of Directors of CortiSlim, Inc. before making major business expenditures or decisions;

h.     the non-existence of any current lawsuits against CortiSlim, Inc.;

i.     the marketing plan and its execution; and

j.     the company who would finalize the design and execution of the marketing plan, each as specifically stated in paragraphs 1 through 9 and 14 through 33 inclusive, inclusive.

48.   Plaintiff is informed, believes, and based thereon alleges that the Sporn Affiliated Defendants', Neubauer's and R. Sporn's statements and/or actions were false in one or more of the following ways:

a.   CortiSlim, Inc. does not own all of the assets used in CortiSlim, Inc.'s operations.  Specifically, CortiSlim, Inc. does not own the "CortiSlim®" trademarks or the domain name "www.cortislim.com." Further, CortiSlim, Inc. does not own the trademark for one of the key ingredients in the CortiSlim® Advanced product, and CortiSlim, Inc. does not own $1,400,000.00 of inventory free and clear of debt;

b.   the Sporn Affiliated Defendants, Neubauer and R. Sporn did not intend to use, nor did they use, the $650,000.00 received from Plaintiff as represented by A. Sporn and Neubauer only for the execution of the marketing plan for the CortiSlim® products;

c.   the Sporn Affiliated Defendants, Neubauer and R. Sporn did not intend to use, nor did they use, Graziano and Max Media exclusively to design and to execute the CortiSlim, Inc. marketing plan;

d.   the Sporn Affiliated Defendants, Neubauer and R. Sporn did not intend to follow, nor did they follow, the marketing plan presented to Cooley;

e.   the Sporn Affiliated Defendants, Neubauer and R. Sporn did not intend to use, nor did they use, a substantial portion of the $650,000.00 for purposes approved by Cooley;

f.     the Sporn Affiliated Defendants, Neubauer and R. Sporn did not intend to exercise, nor did they exercise, strict controls over the expenditure of Plaintiff's investment;

g.     the Sporn Affiliated Defendants, Neubauer and R. Sporn did not intend to provide, nor did they provide, financial information about CortiSlim, Inc. as and when requested by Cooley;

h.     the amount of debt owed by Cortislim, Inc. was greater than represented to Cooley;

i.     the value of CortiSlim, Inc. was materially less than stated in the Valuation Report; and

j.     the representations made by the Sporn Affiliated Defendants, Neubauer and R. Sporn about the lack of any current lawsuits against CortiSlim, Inc. were false.

49.    The representations of the Sporn Affiliated Defendants, Neubauer and R. Sporn and the omitted facts were material to Plaintiff's decision to engage in the purchase of CortiSlim, Inc. stock for the sum of $650,000.00.

50.    The Sporn Affiliated Defendants, Neubauer and R. Sporn made the representations with knowledge of their falsity or recklessly, as a positive assertion, without any knowledge of their truth.   The Sporn Affiliated Defendants, Neubauer, and R. Sporn made these representations for the purpose of inducing Plaintiff to act in reliance on these representations in the manner stated herein, or with the expectation that Plaintiff would so act.

51.    Plaintiff was induced to purchase, and did purchase, CortiSlim, Inc. stock in reliance upon the Sporn Affiliated Defendants', Neubauer's and R. Sporn's

representations as stated in paragraph 47 above, and the Sporn Affiliated Defendants', Neubauer's and R. Sporn's explanation of the reasons for CortiSlim, Inc.'s need for the capital investment.

52.     Plaintiff relied on the Sporn Affiliated Defendants', Neubauer's, and R. Sporn's representations in entering into the transaction with CortiSlim, Inc., because the representations and the stated need for the funds reasonably appeared to be believable.   Plaintiff had no way of knowing that the Sporn Affiliated Defendants', Neubauer's and R. Sporn's representations were false.   In fact, Plaintiff was unable to ascertain the truth concerning the Sporn Affiliated Defendants', Neubauer's, and R. Sporn representations given their control over the information at issue.   Plaintiff's reliance on the Sporn Affiliated Defendants', Neubauer's and R. Sporn's representations was reasonable.

53.     Had Plaintiff known the actual facts, Plaintiff would not have taken the actions alleged herein, including, but not limited to entering into the Subscription Agreement, paying the $650,000.00 and purchasing the CortiSlim, Inc. stock.

54.     As a direct and proximate result of the Sporn Affiliated Defendants', Neubauer's, and R. Sporn's false representations, Plaintiff has suffered general and special damages, including, but not limited to, the principal sum of $650,000.00, deprivation of the use and benefit of that money, including interest which it would have earned thereon, all in an amount to be proven at trial, but in excess of $750,000.00.

55.     By engaging in the foregoing conduct in violation of federal securities law, the Sporn Affiliated Defendants, Neubauer, and R. Sporn acted with fraud and malice, entitling Plaintiff to exemplary and punitive damages, in the amount sufficient to punish

and make an example of them, in an amount to be determined at the time of trial by the jury.

56.     The dissemination of the false information by the Sporn Affiliated Defendants,  Neubauer constitutes violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

## Count III- Violation of the Texas and Delaware State Securities Laws
## (applies to all Defendants)

57.     Plaintiff hereby realleges and incorporates herein, in full, the allegations contained in paragraphs 1 through 9 and 14 through 33 inclusive, as though set forth in full.

58.     The Sporn Affiliated Defendants, Neubauer and R. Sporn engaged in a device, artifice, and scheme to defraud Plaintiff by issuing Plaintiff materially false and misleading statements concerning the financial affairs and condition of CortiSlim, Inc. for the purpose of inducing Plaintiff to purchase CortiSlim, Inc. stock.  Additionally, the Sporn Affiliated Defendants, Neubauer and R. Sporn made untrue statements of material facts and omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.  Finally, the Sporn Affiliated Defendants, Neubauer and R. Sporn engaged in an act, practice and/or a course of business which operated as a fraud and/or deceit upon Plaintiff, all in connection with the purchase or sale of a security.

59.     Specifically, in or around the fall of 2011, the Sporn Affiliated Defendants, Neubauer and R. Sporn made representations to Plaintiff concerning:

a.      the ownership of CortiSlim, Inc.'s  assets and particularly the ownership of the CortiSlim® trademarks and domain name and the ownership of $1,400,000.00 of inventory free and clear of debt;

b.      the amount of debt owed by CortiSlim, Inc.;

c.      the accuracy of the value of CortiSlim, Inc. as stated in the Valuation Report;

d.      the strict controls in place to control the expenditures of Plaintiff's investment;

e.      the use of the funds that Plaintiff invested into CortiSlim, Inc.;

f.      the future makeup of the CortiSlim, Inc. Board of Directors;

g.      the agreement to consult Cooley and the Board of Directors of CortiSlim, Inc. before making major business expenditures or decisions;

h.      the non-existence of any current lawsuits against CortiSlim, Inc.;

i.      the marketing plan and its execution; and

j.      the company who would finalize the design and execution of the marketing plan, each as specifically stated in paragraphs 1 through 9 and 14 through 33 inclusive, inclusive.

60.    Plaintiff is informed, believes, and based thereon alleges that the Sporn Affiliated Defendants', Neubauer's and R. Sporn's representations were false in one or more of the following ways:

a.      CortiSlim, Inc. does not own all of the assets used in CortiSlim, Inc.'s operations.  Specifically, CortiSlim, Inc. does not own the "CortiSlim®"  trademarks  or  the  domain  name

"www.cortislim.com." Further, CortiSlim, Inc. does not own the trademark for one of the key ingredients in the CortiSlim® Advanced product, and CortiSlim, Inc. does not own $1,400,000.00 of inventory free and clear of debt;

b.      the Sporn Affiliated Defendants, Neubauer and R. Sporn did not intend to use, nor did they use, the $650,000.00 received from Plaintiff as represented by A. Sporn and Neubauer only for the execution of the marketing plan for the CortiSlim® products;

c.      the Sporn Affiliated Defendants, Neubauer and R. Sporn did not intend to use, nor did they use, Graziano and Max Media exclusively to design and to execute the CortiSlim, Inc. marketing plan;

d.      the Sporn Affiliated Defendants, Neubauer and R. Sporn did not intend to follow, nor did they follow, the marketing plan presented to Cooley;

e.      the Sporn Affiliated Defendants, Neubauer and R. Sporn did not intend to use, nor did they use, a substantial portion of the $650,000.00 for purposes approved by Cooley;

f.      the Sporn Affiliated Defendants, Neubauer and R. Sporn did not intend to exercise, nor did they exercise, strict controls over the expenditure of Plaintiff's investment;

g.      the Sporn Affiliated Defendants, Neubauer and R. Sporn did not intend to provide, nor did they provide, financial information about CortiSlim, Inc. as and when requested by Cooley;

22

      h.      the amount of debt owed by Cortislim, Inc. was greater than represented to Cooley;

      i.      the value of CortiSlim, Inc. was materially less than stated in the Valuation Report; and

      j.      the representations made by the Sporn Affiliated Defendants, Neubauer and R. Sporn about the lack of any current lawsuits against CortiSlim, Inc. were false.

61.     The representations of the Sporn Affiliated Defendants, Neubauer and R. Sporn and the omitted facts were material to Plaintiff's decision to engage in the purchase of CortiSlim, Inc. stock for the sum of $650,000.00.

62.     The Sporn Affiliated Defendants, Neubauer and R. Sporn made the representations with knowledge of their falsity or recklessly, as a positive assertion, without any knowledge of their truth.   The Sporn Affiliated Defendants, Neubauer and R. Sporn made these representations for the purpose of inducing Plaintiff to act in reliance on these representations in the manner stated herein, or with the expectation that Plaintiff would so act.

63.     Plaintiff was induced to purchase, and did purchase, CortiSlim, Inc. stock in reliance upon the Sporn Affiliated Defendants', Neubauer's and R. Sporn's representations stated in paragraph 59 and the Sporn Affiliated Defendants', Neubauer's and R. Sporn's explanation of the reasons for CortiSlim, Inc.'s need for the capital investment.

64.     Plaintiff relied on the Sporn Affiliated Defendants', Neubauer's and R. Sporn's representations in entering into the transaction with CortiSlim, Inc.  Plaintiff had no way of knowing that the Sporn Affiliated Defendants', Neubauer's and R. Sporn's

representations were false.   In fact, Plaintiff was unable to ascertain the truth concerning the Sporn Affiliated Defendants', Neubauer's and R. Sporn's representations given their control over the information at issue.   Plaintiff's reliance on the Sporn Affiliated Defendants', Neubauer's and R. Sporn's representations was reasonable.

65.     Had Plaintiff known the actual facts, Plaintiff would not have taken the actions alleged herein, including, but not limited to entering into the Subscription Agreement, paying the $650,000.00 and purchasing the CortiSlim, Inc. stock.

66.     As a direct and proximate result of the Sporn Affiliated Defendants', Neubauer's and R. Sporn's false representations, Plaintiff has suffered general and special damages, including, but not limited to, the principal sum of $650,000.00, deprivation of the use and benefit of that money, including interest which it would have earned thereon, all in an amount to be proven at trial, but in excess of $750,000.00.

67.     By engaging in the foregoing conduct in violation of the securities laws of the states of Texas and Delaware, the Sporn Affiliated Defendants, Neubauer and R. Sporn acted with fraud and malice, entitling Plaintiff to exemplary and punitive damages, in the amount sufficient to punish and make an example of them, in an amount to be determined at the time of trial by the jury from all of the Defendants.

## Count IV-Violation of Texas Business & Commerce Code Section 27.01
### (applies to all Defendants)

68.     Plaintiff hereby realleges and incorporates herein, in full, the allegations contained in paragraphs 1 through 9 and 14 through 33 inclusive, as though set forth in full.

69.     The Sporn Affiliated Defendants, Neubauer and R. Sporn engaged in a device, artifice, and scheme to defraud Plaintiff by issuing Plaintiff materially false and

misleading statements concerning the financial affairs and condition of CortiSlim, Inc. for the purpose of inducing Plaintiff to purchase CortiSlim, Inc. stock.

70.     Specifically, in or around the fall of 2011, the Sporn Affiliated Defendants, Neubauer and R. Sporn made representations to Plaintiff concerning:

      a.     the ownership of CortiSlim, Inc.'s  assets and particularly the ownership of the CortiSlim® trademarks and domain name and the ownership of $1,400,000.00 of inventory free and clear of debt;

      b.     the amount of debt owed by CortiSlim, Inc.;

      c.     the accuracy of the value of CortiSlim, Inc. as stated in the Valuation Report;

      d.     the strict controls in place to control the expenditures of Plaintiff's investment;

      e.     the use of the funds that Plaintiff invested into CortiSlim, Inc.;

      f.     the future makeup of the CortiSlim, Inc. Board of Directors;

      g.     the agreement to consult Cooley and the Board of Directors of CortiSlim, Inc. before making major business expenditures or decisions;

      h.     the non-existence of any current lawsuits against CortiSlim, Inc.;

      i.     the marketing plan and its execution; and

      j.     the company who would finalize the design and execution of the marketing plan, each as specifically stated in paragraphs 1 through 9 and 14 through 33 inclusive, inclusive.

71.     Plaintiff is informed, believes, and based thereon alleges that the Sporn Affiliated Defendants', Neubauer's and R. Sporn's representations were false in one or more of the following ways:

a.     CortiSlim, Inc. does not own all of the assets used in CortiSlim, Inc.'s operations.  Specifically, CortiSlim, Inc. does not own the "CortiSlim®" trademarks or the domain name "www.cortislim.com." Further, CortiSlim, Inc. does not own the trademark for one of the key ingredients in the CortiSlim® Advanced product, and CortiSlim, Inc. does not own $1,400,000.00 of inventory free and clear of debt;

b.     the Sporn Affiliated Defendants, Neubauer and R. Sporn did not intend to use, nor did they use, the $650,000.00 received from Plaintiff as represented by A. Sporn and Neubauer only for the execution of the marketing plan for the CortiSlim® products;

c.     the Sporn Affiliated Defendants, Neubauer and R. Sporn did not intend to use, nor did they use, Graziano and Max Media exclusively to design and to execute the CortiSlim, Inc. marketing plan;

d.     the Sporn Affiliated Defendants, Neubauer and R. Sporn did not intend to follow, nor did they follow, the marketing plan presented to Cooley;

e.     the Sporn Affiliated Defendants, Neubauer and R. Sporn did not intend to use, nor did they use, a substantial portion of the $650,000.00 for purposes approved by Cooley;

f.    the Sporn Affiliated Defendants, Neubauer and R. Sporn did not intend to exercise, nor did they exercise, strict controls over the expenditure of Plaintiff's investment;

g.    the Sporn Affiliated Defendants, Neubauer and R. Sporn did not intend to provide, nor did they provide, financial information about CortiSlim, Inc. as and when requested by Cooley;

h.    the amount of debt owed by Cortislim, Inc. was greater than represented to Cooley;

i.    the value of CortiSlim, Inc. was materially less than stated in the Valuation Report; and

j.    the representations made by the Sporn Affiliated Defendants, Neubauer and R. Sporn about the lack of any current lawsuits against CortiSlim, Inc. were false.

72.    The representations of the Sporn Affiliated Defendants, Neubauer and R. Sporn and the omitted facts were material to Plaintiff's decision to engage in the purchase of CortiSlim, Inc. stock for the sum of $650,000.00.

73.    The Sporn Affiliated Defendants, Neubauer and R. Sporn made the representations with knowledge of their falsity or recklessly, as a positive assertion, without any knowledge of their truth.   The Sporn Affiliated Defendants, Neubauer and R. Sporn made these representations for the purpose of inducing Plaintiff to act in reliance on these representations in the manner stated herein, or with the expectation that Plaintiff would so act.

74.    Plaintiff was induced to purchase, and did purchase, CortiSlim, Inc. stock in reliance upon the Sporn Affiliated Defendants', Neubauer's and R. Sporn's

representations stated in paragraph 70 and the Sporn Affiliated Defendants', Neubauer's and R. Sporn's explanation of the reasons for CortiSlim, Inc.'s need for the capital investment.

75.     Plaintiff relied on the Sporn Affiliated Defendants', Neubauer's and R. Sporn's representations in entering into the transaction with CortiSlim, Inc.  Plaintiff had no way of knowing that the Sporn Affiliated Defendants', Neubauer's and R. Sporn's representations were false.   In fact, Plaintiff was unable to ascertain the truth concerning the Sporn Affiliated Defendants', Neubauer's and R. Sporn's representations given their control over the information at issue.   Plaintiff's reliance on the Sporn Affiliated Defendants', Neubauer's and R. Sporn's representations was reasonable.

76.     Had Plaintiff known the actual facts, Plaintiff would not have taken the actions alleged herein, including, but not limited to entering into the Subscription Agreement, paying the $650,000.00 and purchasing the CortiSlim, Inc. stock.

77.     As a direct and proximate result of the Sporn Affiliated Defendants', Neubauer's and R. Sporn's false representations, Plaintiff has suffered general and special damages, including, but not limited to, the principal sum of $650,000.00, deprivation of the use and benefit of that money, including interest which it would have earned thereon, all in an amount to be proven at trial, but in excess of $750,000.00.

78.     The dissemination of the false information by the Sporn Affiliated Defendants, Neubauer and R. Sporn constitutes violations of the Texas Business and Commerce Code Section 27.01.

79.     By engaging in the foregoing conduct in violation of the State of Texas Business and Commerce Code Section 27.01, the Sporn Affiliated Defendants, Neubauer and R. Sporn acted with fraud and malice, entitling Plaintiff to exemplary and punitive

damages, in the amount sufficient to punish and make an example of them, in an amount to be determined at the time of trial by the jury.

## Count V-Breach of Contract

## (applies to the Sporn Affiliated Defendants)

80.    Plaintiff hereby realleges and incorporates herein, in full, the allegations contained in paragraphs 1 through 9 and 14 through 33 inclusive, as though set forth in full.

81.    A. Sporn executed the Subscription Agreement (Exhibit "A") on behalf of CortiSlim, Inc.

82.    CortiSlim, Inc. breached the terms of the Subscription Agreement, including, but not limited to the provisions stating that:

a.    "all material (i.e. having a value in excess of $50,000) loans, trade agreements, or other obligations of CortiSlim, Inc. shall be subject to Clay Cooley's approval, which approval shall not be unreasonably withheld or delayed;"

b.    "the Company would make no major expenditures or major business decisions without polling the members of the Board of Directors in advance;"

c.    "Alan Sporn and Clay Cooley shall vote their shares to elect to the Board of Directors Chase Cooley, Lisa Cooley and Clay Cooley;"

d.    there are no current lawsuits against CortiSlim, Inc.; and

e.    the Sporn Affiliated Defendants "would repurchase the stock sold to Plaintiff for the cost paid if the Plaintiff requests the repurchase."

83.     As a result of the breach of the Subscription Agreement, Plaintiff has suffered general and special damages, including, but not limited to, the principal sum of $650,000.00, deprivation of the use and benefit of that money, including interest which it would have earned thereon, all in an amount to be proven at trial, but in excess of $750,000.00.

## Count VI- Breach of Fiduciary Duty

## (applies to all Defendants)

84.     Plaintiff hereby realleges and incorporates herein, in full, the allegations contained in paragraphs 1 through 9 and 14 through 33 inclusive, as though set forth in full.

85.     At all times relevant, A. Sporn, R. Sporn, and Neubauer were directors and/or officers of CortiSlim, Inc.

86.     As directors and/or officers of CortiSlim, Inc., A. Sporn, R. Sporn, and Neubauer owed a fundamental duty of loyalty and fiduciary responsibility both to CortiSlim, Inc. and to Plaintiff as a minority shareholder.

87.     Directors and officers owe fiduciary duties to minority shareholders and cannot use their corporate power in bad faith or for their individual advantage.

88.     At all times relevant following the issuance of the stock certificate to Plaintiff, A. Sporn, R. Sporn and Neubauer have owed to Plaintiff the fiduciary duties of obedience, loyalty, and due care to act for the best interest of CortiSlim, Inc. and in a fair and equitable manner to Plaintiff as a minority shareholder.

89.     A. Sporn, R. Sporn and Neubauer owed and owe to Plaintiff, as a minority shareholder, fiduciary obligations and were and are required by law, *inter alia*, not to favor their own interests at the expense of Plaintiff as a minority shareholder.

90.     A. Sporn, R. Sporn, and Neubauer have breached their fiduciary duties to Plaintiff as a minority shareholder, *inter alia*, by:

    a.     excluding Cooley, Lisa Cooley, and Chase Cooley from all participation in the board of directors of CortiSlim, Inc.;

    b.     denying Plaintiff all access to information regarding CortiSlim, Inc.'s operations;

    c.     refusing to disclose important financial information to which Plaintiff is entitled as a minority shareholder; and

    d.     favoring their own interests at the expense of Plaintiff.

91.     The foregoing acts by A. Sporn, R. Sporn, and Neubauer constitute conduct by a director, officer and/or controlling shareholder that is, oppressive, fraudulent and a breach of their fiduciary duty to Plaintiff.

92.     As a direct and proximate result of the conduct of A. Sporn, R. Sporn and Neubauer, Plaintiff has suffered general and special damages, including, but not limited to, the principal sum of $650,000.00, deprivation of the use and benefit of that money, including interest which it would have earned thereon, all in an amount to be proven at trial, but in excess of $750,000.00.

## PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff requests the following relief:

a.     Rescission of the stock sale by CortiSlim, Inc. to Plaintiff;

b.     Restitution;

c.     Compensatory damages, damages for lost profits and lost opportunities, and other general and special damages in amounts to be proven at trial;

d.      An order requiring the Defendants to hold in trust the profits and revenues of the sales of any CortiSlim, Inc., NMI or CortiSlim, LLC assets;

e.      Punitive damages;

f.      Interest according to law;

g.      Costs of suit and attorneys' fees, as allowable by law; and

h.      Any other and further relief the Court deems just.


Respectfully submitted,

MARIS & LANIER, P.C.


  /s/ Robert F. Maris
Robert F. Maris
State Bar No. 12986300
rmaris@marislanier.com
Matthew W. Lindsey
State Bar No. 24071893
mlindsey@marislanier.com
3710 Rawlins Street, Suite 1550
Dallas, Texas 75219
214-706-0920 telephone
214-706-0921 facsimile

ATTORNEYS FOR PLAINTIFF
CORTIS, INC.