UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CORTIS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:12-CV-0562-B |
| | § | |
| CORTISLIM INTERNATIONAL, INC., | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

ORDER GRANTING FINAL DEFAULT JUDGMENT

Before the Court is Plaintiff Cortis, Inc.'s Motion for Default Judgment (Doc. 202). For the following reasons, the Court GRANTS the Motion.

I.

BACKGROUND

This is a motion to enter default judgment against Defendants Alan R. Sporn (Sporn); CortiSlim International, Inc. (CortiSlim, Inc.); CortiSlim International, LLC (CSI); and National Marketing, Inc. (NMI) (together, Defaulted Defendants). Doc. 202, Pl.'s Mot. for Entry of Default J. and Notice to Defs. 1. All other defendants originally named have settled. Doc. 197, Agreed Order of Dismissal with Prejudice of Def. Richard A. Sporn; Doc. 206, Agreed Order of Dismissal with Prejudice of Def. John S. Neubauer.

This case arises from Defaulted Defendants' alleged fraudulent acts that induced Plaintiff Cortis, Inc. (Cortis) to invest $650,000.00 in CortiSlim, Inc. by stock purchase. Doc. 1, Compl. ¶¶ 19–33; Doc. 203, Br. in Supp. of Pl.'s Mot. for Default J. 3 [hereinafter Pl.'s Br. in Supp.]. To

recover its investment, Cortis filed this suit, bringing the following claims against Defaulted Defendants: (1) common law fraud; (2) federal securities fraud; (3) Texas and Delaware securities fraud; (4) Texas statutory fraud; (5) breach of fiduciary duty; and (6) breach of contract. Doc. 1, Compl. ¶¶ 34–92. Based on these claims, Cortis seeks rescission of the stock sale, restitution of its $650,000 investment (with interest), attorneys' fees, costs, and punitive damages. *Id.* at 31–32.

Defaulted Defendants have "engaged in a series of delays and violations of the Court's discovery orders,"[1] Doc. 208, Pl.'s Br. in Supp. 3, even though the Court:

- "Issued 'four different orders giving them specific instructions regarding responding to the discovery request.'" *Id.* at 2 (quoting Doc. 185, Magistrate Judge's Findings, Conclusions, & Recommendations 18 [hereinafter FCR]);

- "[A]warded [Plaintiff] monetary sanctions on three occasions for [Defaulted] Defendants' failure to comply with the Court's discovery orders." Doc. 185, FCR 18; and

- "Held a show-cause hearing for why [Defaulted Defendants] should not be held in contempt," Doc. 203, Pl.'s Br. in Supp. 2, and "why their pleadings should not be stricken as a discovery sanction for that failure." Doc. 170, Order to Show Cause 1.

Essentially, Defendants violated four discovery orders. After each violation of the first three, Magistrate Judge Ramirez ordered monetary sanctions. After they violated the fourth, she ordered Defaulted Defendants to show cause for their failure to comply and why their pleadings should not

---

[1] For a more comprehensive procedural account of this case, *see* Doc. 185, Magistrate Judge's Findings, Conclusions, & Recommendations 1–6.

be stricken as a discovery sanction.

After the show cause hearing, Judge Ramirez recommended that the Court strike Defendants' pleadings as a discovery sanction and direct the court clerk to enter a default against Defendants. Doc. 185, FCR 19. The Court accepted the Magistrate's recommendation. Doc. 192, Order Accepting Findings & Recommendations. Accordingly, the Court struck Defendants' pleadings and directed the court clerk to enter a default against Defendants, which the clerk entered on the same day. *Id.* at 14; Doc. 193, Clerk's Entry of Default. On May 5, 2016, Cortis filed its Motion for Default Judgment, which the Court now reviews. Doc. 202, Pl.'s Mot. for Entry of Default Judgment & Notice to Defs. The only question before the Court is whether to enter a default judgment against Defaulted Defendants.

## II.

## LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure authorizes the Court to enter a default judgment against a defendant who has failed to plead or otherwise defend upon motion of the plaintiff. Fed. R. Civ. P. 55(a)–(b). That being said, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A party is not entitled to a default judgment merely because the defendant is technically in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). "Rather, a default judgment is generally committed to the discretion of the district court." *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008) (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)).

In determining whether a default judgment should be entered against a defendant, courts

have developed a three-part analysis. *See, e.g., 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d at 384. First, courts consider whether the entry of default judgment is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The following factors, known as the *Lindsey* factors, are relevant to this inquiry:

> [1] whether material issues of fact exist; [2] whether there has been substantial prejudice; [3] whether the grounds for default are clearly established; [4] whether the default was caused by a good faith mistake or excusable neglect; [5] the harshness of a default judgment; and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Id.* (citations omitted)

Second, courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover"). In doing so, courts are to assume that due to its default, a defendant admits all well-pleaded facts in the plaintiff's complaint. *Id.* However, the "defendant is not held to admit facts that are not-well pleaded or to admit conclusions of law." *Id.*

Third, courts determine what form of relief, if any, the plaintiff should receive. *See, e.g., 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d at 384. Normally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

III.

ANALYSIS

Applying the three-part analysis detailed above, the Court concludes that Cortis is entitled to a default judgment on several of its claims, and that it is entitled to rescission of the CortiSlim, Inc. stock sale, restitution of its $650,000 investment, post-judgment interest, and costs in the amount of $2,718.17. For reasons explained below, the Court does not find that Cortis is entitled to pre-judgment interest or attorneys' fees at this time, but will allow Cortis to file supplemental briefing on these issues. The Court also finds that Cortis is not entitled to punitive damages. The Court now begins its three-part analysis.

A.  *Default Judgment is Procedurally Warranted*

After applying the six *Lindsey* factors to Cortis's Motion, the Court concludes that default judgment is procedurally warranted. First, no material issues of fact exist as the Court has stricken Defaulted Defendants' pleadings, the clerk has entered a default against them, and there are no other defendants remaining to defend this action. *See Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact").

Second, Cortis has "been substantially prejudiced by its inability to prepare its case and move forward with litigation" because "it has been over fourteen months since [Cortis]'s first set of discovery was due and almost two and one half years since the case was filed, and [Cortis] still does not have complete responses to its discovery requests, or all non-privileged documents responsive to its requests." *See* Doc. 185, FCR 17; *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex, Oct. 5, 2011) ("[F]ailure to respond threatens to bring the

adversary process to a halt, effectively prejudicing Plaintiff's interests.").

Third, the grounds for default are clearly established: stricken pleadings. And the basis for stricken pleadings is clearly established: Judge Ramirez performed a detailed analysis, which the Court accepted, concluding that "a lesser sanction than striking [Defaulted Defendants'] pleadings would not substantially achieve the necessary deterrent effect." Doc. 185, FCR 19.

Fourth, the grounds for striking Defaulted Defendants' pleadings, the basis for their default, were not the result of good-faith mistake or excusable neglect. *See Lindsey*, 161 F.3d at 893. Rather, it resulted from "delay and violation of the Court's discovery orders . . . attributable to [Defaulted] Defendants." Doc. 185, FCR 16.

Fifth, as explained above, the harshness of ordering a default judgment is mitigated by the fact that numerous lesser sanctions proved ineffective. *See id.* at 19.

Sixth, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by Defaulted Defendants. *See Lindsey*, 161 F.3d at 893.

Therefore, the Court concludes that default judgment is procedurally warranted.

B.   *Default Judgment is Substantively Warranted*

In light of the entry of default, Defaulted Defendants are deemed to have admitted the allegations set forth in Cortis's Complaint. Nonetheless, the Court must review the pleadings to determine whether they provide a sufficient basis for Cortis's claim for relief. *Nishimatsu Constr.*, 515 F.2d at 1206. In conducting this review, the Fifth Circuit has looked to Rule 8 case law for guidance:

> Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The factual allegations in the complaint need only

> "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (footnote and citations omitted). "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).

Before beginning, the Court must address a predicate issue: several of Cortis's pleaded claims address the actions of Sporn, but do not expressly connect his actions to those of the other Defaulted Defendants. Instead, for purposes of its Complaint, Cortis attributes the actions of Sporn to the other Defaulted Defendants, pleading an alter ego theory of liability. *See* Doc. 1, Compl. ¶ 9.

The Texas Supreme Court has held "that the limitation on liability afforded by the corporate structure can be ignored only 'when the corporate form has been used as part of a basically unfair device to achieve an inequitable result.'" *SSP Partners v. Gladstrong Investments (USA) Corp.*, 275 S.W.3d 444, 451 (Tex. 2008) (quoting *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986)). One of the bases for disregarding the corporate structure and piercing the corporate veil is the "alter ego doctrine." *Norfolk Southern Ry. Co. v. Trinity Industries Inc.*, No. 3:07-CV-1905, 2009 WL 362437, at *5 (N.D. Tex. Feb. 13, 2009). "Under the 'alter ego doctrine' the corporate veil may be pierced when (1) there is such unity between a corporation and individual that the separateness of the corporation has ceased and (2) holding only the corporation liable would result in injustice." *Id.* (citing *Gentry v. Credit Plan Corp.*, 528 S.W.2d 571, 573 (Tex. 1975)). A showing of abuse of the corporate structure which results in injustice or inequity is required to pierce the corporate veil. *SSP Partners*, 275 S.W.3d at 451, 455. Examples include "when the corporate structure has been abused to perpetrate a fraud, evade an existing obligation, achieve or perpetrate a monopoly, circumvent a statute, protect a crime, or justify wrong." *Id.* at 451.

Here, Cortis alleges: (1) "Sporn Affiliated Defendants,[2] and each of them, used assets of each of the other Sporn Affiliated Defendants for their own purposes as though it were their own and caused assets to be transferred between them or to entities they controlled"; (2) "the Sporn Affiliated Defendants each directly and indirectly controlled each other"; (3) "[e]ach has direct and indirect control of the other, including the power to direct or cause the direction of the management and polices of the other"; and (4) "the Sporn Affiliated Defendants exercised active control over the day-to-day affairs of the other." Doc. 1, Compl. ¶ 9. Defaulted Defendants are deemed to have admitted the allegations set forth in Cortis's Complaint, so in essence they have admitted to essentially acting as a single entity. This factually supports Cortis's additional allegations that unity between corporation and individual to the extent that corporate separateness has ceased, that not holding both the corporation and individual liable would result in injustice, and that the corporate structure has been abused to perpetrate a fraud. *See id.* Thus, the Court will treat Sporn and the other Defaulted Defendants as alter egos. Therefore, any liability attributed to one will be attributed to the others.

### 1. Overview of Cortis's Claims

Cortis seeks to recover on claims for (1) common law fraud; (2) federal securities fraud; (3) Texas and Delaware securities fraud; (4) Texas statutory fraud; (5) breach of fiduciary duty; and (6) breach of contract. Doc. 1, Compl. ¶¶ 34–92. Cortis's pleadings must provide a sufficient basis for relief under Rule 8, but because several of these claims involve fraud, the Court will also consider whether they comport with the heightened pleading standards of Rule 9(b): "a party must state with

---

[2] The Sporn Affiliated Defendants, aside from Sporn, are CSI, NMI, and CortiSlim, Inc.

particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy Rule 9, the plaintiff must "specify the statements contended to be fraudulent, identity the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Put another way, the plaintiff must detail the "who, what, when, where, and how" of the alleged fraud. *Id.* at 119.

### 2. Common Law Fraud

To recover for common law fraud, Cortis must show:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (quoting *Aquaplex, Inc. v. Rancho la Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam)).

Here, Cortis alleges that: (1) Defaulted Defendants made material representations about, *inter alia*, CortiSlim, Inc.'s assets, debt, and value, as well as what use would be made of Cortis's investment,[3] Doc. 1, Compl. ¶ 36; (2) these representations were false in numerous ways, including that CortiSlim, Inc. did not own the assets that Defaulted Defendants claimed it did, and that CortiSlim, Inc. did not use Cortis's investment in the manner promised, *id.* ¶ 37; (3) when Defaulted Defendants made these representations, they did so knowingly or recklessly, *id.* ¶ 38; (4) their representations were intended to induce Cortis to invest in CortiSlim, Inc., *id.* ¶ 39; (5) Cortis did

---

[3] Cortis indicated that it would invest if its investment "were used only for marketing costs," Doc. 1, Compl. ¶ 25(a), making this consideration material.

invest, *id.* ¶ 40; and, as a result, (6) suffered a loss of its investment of $650,000.00, as well as interest. *Id.* ¶ 41. This satisfies each element of a common law fraud claim. Cortis also clearly details the who, what, when, where, and how of the fraud. *See id.* ¶¶ 25–33. Thus, the Court concludes that the pleadings set forth a sufficient basis for Cortis's common law fraud claim under Rules 8 and 9. *See Nishimatsu Constr.*, 515 F.2d at 1206.

### 3. Federal Securities Fraud

To recover for federal securities fraud under 17 C.F.R. § 240.10b-5, Cortis must show: (1) use of any means or instrumentality of interstate commerce; (2a) to employ any device, scheme, or artifice to defraud; or (2b) to make any untrue statement of a material fact; and (3) in connection with the sale of any security. 17 C.F.R. § 240.10b-5. Here, Cortis alleges that Defaulted Defendants used email (an instrumentality of interstate commerce), Doc. 1, Compl. ¶ 25, to engage in a scheme to defraud Cortis by soliciting the purchase of CortiSlim, Inc. stock (a security) through untrue statements about the use of money received from this stock purchase. *Compare id.* ¶ 25(a) (assuring Cortis that the $650,000.00 would be used solely for marketing costs, and that "none of the monies would be used to pay prior obligations of CortiSlim, Inc. or salaries to CortiSlim, Inc. employees"), *with id.* ¶ 30 ("After receipt of Plaintiff's investment of $650,000.00, [Sporn, a Defaulted Defendant] used a large portion of the $650,000.00 to pay salaries . . . as well as to pay other obligations of Cortislim, Inc."). This satisfies each element of a federal securities fraud claim. Cortis also clearly details the who, what, when, where, and how of the fraud. *See id.* ¶¶ 25–33. Thus, the Court concludes that the pleadings set forth a sufficient basis for Cortis's federal securities fraud claim under Rules 8 and 9. *See Nishimatsu Constr.*, 515 F.2d at 1206.

### 4. Texas and Delaware Securities Fraud

To recover for Texas securities fraud and Delaware securities fraud, Cortis must show basically the same elements that it has shown to recover for federal securities fraud.[4] *See* Tex. Rev. Civ. Stat. Ann. art. 581-33; Del. Code Ann., Tit. 6, § 73-201. For this reason, the Court concludes that the pleadings set forth a sufficient basis for these claims.

### 5. Texas Statutory Fraud

The elements of a cause of action for statutory fraud in the sale of stock consist of a:

> (1) False representation of a past or existing material fact, when the false representation is (A) made to a person for the purpose of inducing that person to enter into a contract; and (B) relied on by that person in entering that contract; or (2) False promise to do an act, when the false promise is (A) material; (B) made with the intention of not fulfilling it; (C) made to a person for the purpose of inducing that person to enter into a contract; and (D) relied on by that person in entering into that contract.

*7-Eleven Inc. v. Puerto Rico-7 Inc.*, No. 3:08-CV-0140, 2008 WL 4951502, at *3 (N.D. Tex. Nov. 19, 2008) (quoting Tex. Bus. & Com. Code § 27.01(a)). The Court has already determined that the pleadings state that Defaulted Defendants made a false representation of past or existing material fact to induce Cortis into entering into a contract, and that Cortis relied on this false representation. *See supra* Part III.B.2. This satisfies the elements of a statutory fraud claim. Additionally, the Court has already determined that these pleadings satisfy Rule 9. *See id.* Accordingly, the Court concludes that the pleadings set forth a sufficient basis for this claim.

### 6. Breach of Fiduciary Duty

To recover for breach of fiduciary duty under Texas law, Cortis must show: "(1) a fiduciary

---

[4] Texas and Delaware law do not require Cortis to show the use of any means or instrumentality of interstate commerce.

relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied). Here, Cortis alleges that it had a fiduciary relationship with Sporn (and the other Defaulted Defendants through an alter ego theory of liability). Doc. 1, Compl. ¶¶ 86–89 (outlining fiduciary relationship between Sporn, as a director and officer of CortiSlim, Inc., and Cortis, a minority shareholder). This is incorrect. "A director's fiduciary duty runs only to the corporation, not to individual shareholders or even to a majority of the shareholders." *Somers ex rel. EGL, Inc. v. Crane*, 295 S.W.3d 5, 11 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Because Cortis does not sue on behalf of CortiSlim, Inc., it may not recover for breach of fiduciary duty. Accordingly, the Court concludes that the pleadings do not set forth a sufficient basis for this claim.

### 7. Breach of Contract

"In Texas, 'the essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)) (alterations omitted). Here, Cortis alleges that the Subscription Agreement was a valid, enforceable contract between Cortis and CortiSlim, Inc., *see* Doc. 1, Compl ¶ 81 (referencing Doc. 1-1, Ex. A, Subscription Agreement); that it performed or tendered performance, *id.* ¶ 29 ("Plaintiff, thereafter delivered the amount of $650,000.00 to Cortislim, Inc [sic] for the stock."); that there was a breach of the contract, *id.* ¶ 82 (listing breached provisions); and that the breach caused damages, including

the deprivation of use and benefit of the $650,000.00 invested. *Id.* ¶ 83. This satisfies each element of a breach of contract claim. Thus, the Court concludes that the pleadings set forth a sufficient basis for this claim. *See Nishimatsu Constr.*, 515 F.2d at 1206.

### 8. Conclusion

Therefore, the Court finds that Cortis has stated viable claims for common law fraud; federal, Texas, and Delaware securities fraud; Texas statutory fraud; and breach of contract. It has not stated a viable claim for breach of fiduciary duty. That being said, Cortis has numerous avenues of recovery, so the Court holds that there is a sufficient basis in the pleadings for entry of a default judgment. The Court will now consider what form of relief, if any, Cortis should receive.

## C. Cortis's Claims are for a Sum Certain

"A defendant's default concedes the truth of the [Complaint's] allegations . . . concerning [his] liability, but not damages." *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. CIV.A. C-10-390, 2011 WL 4738197, at *4 (S.D. Tex. Oct. 5, 2011) (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 521, 524–25 (5th Cir. 2002)). Ordinarily, a Court must hold a hearing to establish damages. *See United Artists Corp.*, 605 F.2d at 857. But this is not always the case. If pleadings, affidavits, and supporting documents allow a Court to determine damages by mathematical calculation, a hearing is unnecessary. *Id.* This is known as a sum certain.

Cortis seeks rescission of the CortiSlim stock sale, restitution of its $650,000 investment (with interest), attorney's fees, costs, and punitive damages. Doc. 1, Compl. 31–32.

### 1. Rescission, Restitution, and Interest

Here, Cortis's requests for rescission, restitution, and interest are requests for sums certain. Cortis's Subscription Agreement clearly lays out that the stock purchase was executed for

-13-

$650,000.00. Thus, the Court finds that Cortis is entitled to a rescission of the sale and recovery of this amount, as well as post-judgment interest. As for pre-judgment interest, however, it is unclear from Cortis's briefing what interest rate it would have the Court apply. Thus, the Court cannot find that Cortis is entitled pre-judgment interest at this time; however, Cortis may file supplemental briefing detailing the applicable interest rate.

   2. <u>Attorneys' Fees</u>

Next, the Court considers Cortis's request for attorneys' fees based on its Texas statutory fraud and breach of contract claims. *See* Tex. Bus. & Com. Code § 27.01(e); Tex. Civ. Prac. & Rem. Code § 38.001(8). While the Court agrees that Cortis may recover attorneys' fees based on these claims, it cannot calculate an accurate fee total based on what it has received. Cortis asserts that it "[s]egregated to fees incurred in pursuing claims against the Defaulted Defendants," Doc. 203, Pl.'s Br. in Supp. 8, but do not explain if that means that it segregated fees incurred pursuing its statutory fraud and breach of contract claims or all of its claims. Claimants must segregate the fees for claims for which they may recover from those for which they may not. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). But when the same discrete legal services advance both a recoverable and unrecoverable claim, they need not be segregated. *Id.* at 313–14.

Additionally, Cortis seeks "attorney's fees previously awarded to the Plaintiff based on discovery violations." Doc. 204-8, Maris Aff. ¶ 11, Pl.'s App. 284. The exact amount of these previous awards is unclear. And for neither the segregated fees nor the previously awarded fees does Cortis provide a legal analysis of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *See Jimenez v. Wood Cty., Tex.*, 621 F.3d 372, 380 (5th Cir. 2010). Thus, the Court cannot find that Cortis is entitled to attorneys' fees at this time;

however, Cortis may file supplemental briefing to provide the additional information outlined by the Court that would assist it in making this determination.

### 3. Costs

Cortis seeks costs of $2,718.17, as well. Doc. 203, Pl.'s Br. in Supp. 9. Having reviewed this request and the corresponding portions of Cortis's appendix, the Court finds that Cortis is entitled to costs in this amount.

### 4. Punitive Damages

Cortis seeks punitive damages, arguing that Defaulted Defendants acted with malice, and that it is within the Court's discretion "to award punitive damages in an amount to be determined by the Court." Doc. 203, Pl.'s Br. in Supp. 8. The Court declines to find that Cortis is entitled to an award of punitive damages. Cortis already will receive a complete rescission of its stock purchase, a refund of its $650,000.00 investment, post-judgment interest, pre-judgment interest if it properly files supplemental briefing, attorneys' fees if it properly files supplemental briefing, and costs. From the Court's perspective, to add on punitive damages on top of this when Defaulted Defendants have already been punished by having their pleadings stricken and a default entered against them would be an abuse of discretion. Thus, the Court finds that Cortis is not entitled to punitive damages.

## IV.

## CONCLUSION

Based on the foregoing, the Court GRANTS Cortis's Motion for Default Judgment (Doc. 202). It is therefore ORDERED, ADJUDGED, and DECREED that Cortis is entitled to the following relief:

1. Rescission of the CortiSlim stock sale;

    2.       Restitution of its $650,000.00 investment;

    3.       Post-judgment interest at a rate of 0.52%;[5] and

    4.       Costs in the amount of $2,718.17.

Cortis may file supplemental briefing on the issues of Interest and Attorneys' Fees. If it chooses to do so, such supplemental briefing shall be filed by August 29, 2016.

    SO ORDERED.

    Dated: July 22, 2016.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[5] Post-judgment interest is calculated using the weekly average 1-year constant maturity (nominal) Treasury yield, as published by the Federal Reserve System for the calendar week preceding. 28 U.S.C. § 1961. The 1-year rate for the week ending July 15, 2016 (and thus effective July 18, 2016, through July 24, 2016) is 0.52%.